UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Steven W. Vennemann,

Plaintiff,

v.

Badger Mutual Insurance Company,

Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 02-64 ADM/AJB

---

Robert J. Patient, Esq., St. Paul, MN, appeared for and on behalf of Plaintiff.

John Laravuso, Esq., Flynn, Gaskins & Bennett, L.L.P., Minneapolis, MN, appeared for and on behalf of Defendant.

---

## I. INTRODUCTION

On September 5, 2002, the Motion for Summary Judgment [Docket No. 12] of Defendant Badger Mutual Insurance Company ("Defendant"), was argued before the undersigned United States District Judge. For the reasons set forth below, the Summary Judgment Motion is granted.

## II. BACKGROUND

The facts in this case are straightforward and undisputed. Plaintiff Steven W. Vennemann ("Plaintiff") bought a house on July 11, 2000, which was substantially damaged by an arson fire on September 13, 2000. The Minnesota Standard Fire Insurance Policy, Minn. Stat. § 65A.01 Subd. 3, is incorporated into Plaintiff's insurance policy and includes a vacancy exclusion barring coverage of loss caused by vandalism or malicious mischief while the dwelling was vacant for more than 60 consecutive days. It is undisputed that the property was vacant at the time of the fire; the only question is whether or not the house was vacant for a period of 60

SEP 2 6 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD SEP 2 6 2002
DEPUTY CLERK

days prior to the fire.

Plaintiff testified, under oath, during an Examination Under Oath ("EUO"), that he purchased the property in New Scandia, Minnesota, on July 11, 2000, and moved all of his personal belongings into the home intending to live there. Pl. EUO at 26, 29-30 (Laravuso Aff. Ex. G). Plaintiff stated that he "had all [his] stuff stored there . . . a TV, stereos, clothes, you name it." Id. at 24. Plaintiff testified that he "stored" his personal belongings in the house from approximately the time it was purchased until an unspecified time at which he moved all his belongings to a second house in White Bear Lake, Minnesota, into which he and his girlfriend had moved. Id. at 24-25. Plaintiff testified that he has "no idea" when he bought the second house, and does not know the day or month it was purchased, nor when he moved all his belongings there. Id. at 25-26. Plaintiff states that the purchase of the second house, and the attendant moving of his belongings from the first to the second house, was at some point between the purchase of the first house on July 11 and the fire on September 13, because, in his words, "[e]verthing I own was there, but it wasn't there during the fire. There was nothing in the house." Id. at 24-25. Plaintiff stated that he had "no idea" whether it was days, weeks, or months prior to the fire that he moved his stored belongings out of the subject house. Id. at 25.

Accordingly, the Court assumes, as it must, that the stored belongings were present in the house for some period of time within 60 days prior to the fire. While Plaintiff's personal belongings were stored in the house, Plaintiff stated that "about 99% was in the garage," and that during this time he "lived" with his girlfriend at her apartment. Id. at 27, 30. Plaintiff submitted a one-page affidavit asserting that during this time "food and beverages were kept at the [house]," but at no time did Plaintiff indicate that the burned house was ever furnished.

Vennemann Aff. at 1. Also during this time, Plaintiff was staying overnight at the property a couple of times a week, on average, "when [he] made it up there," mostly on the weekends, but on no regular schedule. Id. at 23. Plaintiff was doing some touch-up work and renovations in the house, such as tiling and painting, but at no time was there ever a telephone connection hooked up. Id. at 23, 32, 42. Plaintiff stated that "I stayed there once in a while when I had my belongings . . . stored there while I was remodeling the place, but it was only a few days a week, . . . you know, while I was up there remodeling . . . ." Id. at 21-22. However, Plaintiff has "[n]o idea" when the last time he stayed overnight in the house was prior to the fire, and "[n]o idea" how many total times he stayed at the house. Id. at 22. At the time of the fire, a "washer, dryer [and] dishwasher" remained in the house. Id. at 21. Plaintiff, a real estate agent by profession, was in the process of selling the house at the time of the fire, and had reduced the asking price explaining that "I just felt I was just going to sell it quick, get rid of it, or I was going to rent it, one of the two. I didn't want to leave it vacant." Id. at 47.

## III. DISCUSSION

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party

may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). Further, "the mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment . . . . Instead, 'the dispute must be outcome determinative under prevailing law.'" Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992) (citation omitted). There is no such outcome determinative dispute in this case.

The vacancy exclusion does not apply to houses under construction. Plaintiff argues that the vacancy exclusion does not apply to his policy because the house was "under construction" at the time of the fire. The record belies this assertion. While Plaintiff was clearly doing some renovation work to the house, including re-roofing, installing new central-air, painting, interior tiling, and spray-washing the exterior, none of these activities constitute "construction" of the house. Will Realty Corp. v. Transportation Ins. Co., 429 N.E.2d 372, 373 (Mass. App. Ct. 1986) (holding that "construction" in a finished building requires "substantial continuing activities"); id. at 32, 42. Plaintiff does not contend that any structural changes were being made to the house, or that initial construction had never been completed on the house, such that it was unlivable. The vacancy exclusion applies to this case.

The only question pertinent to determining if the vacancy exclusion is operative under the circumstances is whether or not (1) Plaintiff's personal belongings stored in the garage and (2) Plaintiff's staying overnight in the house an average of two times a week while doing various remodeling projects, together, function to make the property "not vacant."

Considering the facts in the light most favorable to Plaintiff, this Court concludes that the

subject property simply cannot be said to have been furnished or regularly occupied during the relevant time period. The policy rationale behind the vacancy provision is that houses without people regularly occupying the premises, and without furnishings and other personal property that are tell-tale signs of occupancy, are at a greater risk for vandalism including arson, and more likely to incur greater damage if unattended. See, e.g., Langill v. Vermont Mut. Ins. Co., 268 F.3d 46, 48 (1st Cir. 2001) (holding that the vacancy provision applies to a house containing a "motley and sparse inventory of chairs, mattress, and step ladder" because "random evening visits hardly provide the appearance of somebody being at home or effective anti-vandal protection"); Catalina Enter. v. Hartford Fire Ins. Co., 67 F.3d 63, 66 (4th Cir. 1995) ("Chances are also greater that a fire in a vacant building will burn for a longer period and cause greater damage before being detected."); Will Realty, 492 N.E.2d at 373 ("The policy provision reflects the commonplace observation that the risk of casualty is higher when premises remain unattended."). Additionally, premises may be "vacant" despite sporadic entry. Will Realty, 492 N.E.2d at 373. Plaintiff's irregular occupancy of the house does not constitute a presence sufficient "to discourage, see, or hear marauders, or to hear the activation of smoke detectors." Langill, 268 F.3d at 48. Nor does his storage of 99% of his personal belongings in the garage embody "the presence of furnishings and amenities 'minimally necessary for human habitation.'" Id. (quoting American Mut. Fire Ins. Co. v. Durrence, 872 F.2d 378, 379 (11th Cir. 1989)).

Defendant's Motion for Summary Judgment is granted.

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 12] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Date: September 26, 2002